**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| EYENAVISION, INC., | ) | |
| | ) | No. 2:21-cv-00246-RJC |
|     Plaintiff/Counterclaim-Defendant, | ) | |
| | ) | |
|     vs. | ) | Judge Robert J. Colville |
| | ) | |
| ENCHROMA, INC., | ) | |
| | ) | |
|     Defendant/Counterclaim-Plaintiff. | ) | |

**MEMORANDUM OPINION**

Robert J. Colville, United States District Judge

Before the Court are the following Motions: (1) the Partial Motion to Dismiss (ECF No. 12) filed by Defendant/Counterclaim-Plaintiff EnChroma, Inc. ("EnChroma"); and (2) the Motion to Dismiss Counterclaim (ECF No. 16) filed by Plaintiff/Counterclaim-Defendant Eyenavision, Inc. ("Eyenavision"). EnChroma moves, pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss the following claims set forth in Eyenavision's Complaint (ECF No. 1) ("Complaint"): (1) Eyenavision's claim for false marking under 35 U.S.C. § 292 (Count II); (2) Eyenavision's claim for false advertising under the Lanham Act (Count IV); and (3) Eyenavision's claim for unfair competition under Pennsylvania common law (Count V). Mot. 1, ECF No. 12. Eyenavision moves, pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss the patent infringement Counterclaim set forth in EnChroma's Partial Answer and Counterclaim (ECF No. 11). The Court has original subject matter jurisdiction in this matter pursuant to 28 U.S.C. §§ 1331 and 1338. The Motions at issue have been fully briefed, and are ripe for disposition.

1

## I.      Factual Background & Procedural History

This is a patent action brought by Eyenavision, an accused infringer, against EnChroma, the assignee of all right, title, and interest in U.S. Patent No. 10,338,286 ("the '286 Patent"), which is titled "Multiband color vision filters and method by LP-optimization."  Compl. ¶¶ 7; 9, ECF No. 1; Partial Answer ¶¶ 7; 9, ECF No. 11.  The technology at issue in this matter consists of optical filters for lenses intended to assist individuals who suffer from color vision deficiency ("CVD"), also referred to as color blindness, to differentiate between colors.  Br. in Opp'n 1, ECF No. 18; Counterclaim ¶ 7, ECF No. 11.

EnChroma manufactures, sells, and distributes lenses with filtering technology, purportedly consistent with the '286 Patent, designed to assist individuals with CVD.  Compl. ¶ 6, ECF No. 1; Partial Answer ¶ 6, ECF No. 11.  EnChroma avers that it employs its optical filters in "glasses, sunglasses[,] and scenic viewers to enable those with CVD to see a broader spectrum of colors." Br. in Supp. 3-4, ECF No. 13.  Eyenavision alleges that EnChroma sells, via EnChroma's website, at least four distinct lenses, including the Outdoor Cx3 Sun SP lenses, the Outdoor Cx3 Sun lenses, the Indoor Cx1 Indoor lenses, and the Indoor Cx1 DT Indoor lenses (collectively, the "EnChroma Lenses").   Compl.  ¶¶ 41-43, ECF No. 1.   Eyenavision further alleges that the "Enchroma Patent Marking Page" on EnChroma's website identifies that all EnChroma eyewear, including the EnChroma Lenses, falls within the scope of at least one valid claim of the '286 Patent.  *Id.* at ¶¶ 42; 62.  Eyenavision avers, for reasons set forth in detail in the Complaint, that the EnChroma Lenses do not fall within the limitations of Claim 1 of the '286 Patent.  *Id.* at ¶¶ 44-55.

Eyenavision alleges that HUE.AI, LLC "is the developer and owner of proprietary CVD lens technology[] [that] is the subject of at least one issued United States Patent (U.S. Patent

Number 10,852,567) and at least two pending United States patent applications (U.S. Patent Application Numbers 16/329,563 and 16/212,413)," and that this CVD lens technology selectively filters portions of the visible spectrum in a manner that allows many individuals with CVD to better discern colors. Compl. ¶¶ 14-15, ECF No. 1.   Eyenavision alleges that, in 2019, it entered into a licensing and distribution agreement with HUE.AI, LLC that gives Eyenavision "the right to make, have made, import into, use, market and sell products incorporating the CVD technology in specific territories, including North America." *Id.* at ¶ 16.

In November of 2020, Eyenavision began selling and offering to sell lenses branded with the trade name "Chemistrie Color," including lenses referred to as "Indoor," "Outdoor Moderate," and "Outdoor Severe,"[1] which Eyenavision asserts are intended to assist individuals with CVD. Compl. ¶ 17, ECF No. 1; Partial Answer ¶ 17, ECF No. 11.   On December 28, 2020, EnChroma sent a letter to Eyenavision asserting that the Eyenavision Products infringe, at least, Claim 1 of the '286 patent. Compl. Ex. B, ECF No. 1-2. EnChroma further demanded that Eyenavision cease its purportedly infringing sale, offer of sale, and/or distribution of the Eyenavision Products. *Id*. Eyenavision refused, and subsequently filed this declaratory judgment action asserting claims of non-infringement of the '286 Patent and invalidity, as well as claims for false marking, violation of the Lanham Act, and unfair competition.

Eyenavision filed the Complaint on February 19, 2021.  EnChroma filed its Partial Motion to Dismiss on April 23, 2021.  On that same date, EnChroma also filed a Partial Answer (answering only the allegations in the Complaint that it believes are relevant to Eyenavision's patent infringement (Count I) and invalidity (Count III) declaratory judgment causes of action) and Counterclaim (ECF No. 11). The following docket entries are relevant in the context of the Court's

---

[1] The Court shall refer to these products collectively as the "Eyenavision Products."

consideration of EnChroma's Partial Motion to Dismiss: (1) EnChroma's Brief in Support (ECF No. 13); (2) Eyenavision's Brief in Opposition (ECF No. 18); and (3) EnChroma's Reply (ECF No. 19).  The following docket entries are relevant to the Court's consideration of Eyenavision's Motion to Dismiss Counterclaim: (1) Eyenavision's Brief in Support (ECF No. 17); (2) EnChroma's Brief in Opposition (ECF No. 20); and (3) Eyenavision's Reply (ECF No. 21).

## II.    Legal Standard

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint.[2]  *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).  In deciding a motion to dismiss, the court is not opining on whether the plaintiff will likely prevail on the merits; rather, when considering a motion to dismiss, the court accepts as true all well-pled factual allegations in the complaint and views them in a light most favorable to the plaintiff.  *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002).  While a complaint does not need detailed factual allegations to survive a Rule 12(b)(6) motion to dismiss, a complaint must provide more than labels and conclusions.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A "formulaic recitation of the elements of a cause of action will not do."  *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

---

[2] "For purposes of deciding a motion to dismiss under Rule 12(b)(6), claims and counterclaims are treated the same, and therefore, [are] subject to the same standard of review." *Barnett v. Platinum Equity Cap. Partners II, L.P.*, No. 2:16-CV-1668, 2017 WL 3190654, at *3 (W.D. Pa. July 27, 2017) (citing *Red Bend Hunting & Fishing Club v. Range Resources—Appalachia, LLC*, Case No. 4:16-CV-00864, 2016 WL 7034686, *3 n. 35 (M.D. Pa. Dec. 2, 2016)).  The Court further notes that a court may "rely on facts pled in the complaint, but only to the extent that they have been admitted in defendant's answer." *Id.*

reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at

678 (citing *Twombly*, 550 U.S. at 556). The Supreme Court of the United States has explained:

> The plausibility standard is not akin to a "probability requirement," but it asks for
> more than a sheer possibility that a defendant has acted unlawfully. Where a
> complaint pleads facts that are "merely consistent with" a defendant's liability, it
> "stops short of the line between possibility and plausibility of 'entitlement to
> relief.'"

*Id.* (quoting *Twombly*, 550 U.S. at 556) (internal citations omitted).

The United States Court of Appeals for the Third Circuit instructs that "a court reviewing

the sufficiency of a complaint must take three steps." *Connelly v. Lane Constr. Corp.*, 809 F.3d

780, 787 (3d Cir. 2016). The court explained:

> First, it must "tak[e] note of the elements [the] plaintiff must plead to state a claim."
> *Iqbal*, 556 U.S. at 675. Second, it should identify allegations that, "because they
> are no more than conclusions, are not entitled to the assumption of truth." *Id.* at
> 679; *see also Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011)
> ("Mere restatements of the elements of a claim are not entitled to the assumption of
> truth." Finally, "[w]hen there are well-pleaded factual allegations, [the] court
> should assume their veracity and then determine whether they plausibly give rise
> to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

*Connelly*, 809 F.3d at 787. "Determining whether a complaint states a plausible claim for relief

will . . . be a context-specific task that requires the reviewing court to draw on its judicial

experience and common sense." *Iqbal*, 556 U.S. at 679 (internal citations omitted).

"In alleging fraud or mistake, a party must state with particularity the circumstances

constituting fraud or mistake." Fed. R. Civ. P. 9(b). The United States Court of Appeals for the

Third Circuit has explained:

> Pursuant to Rule 9(b), a plaintiff alleging fraud must state the circumstances of the
> alleged fraud with sufficient particularity to place the defendant on notice of the
> "precise misconduct with which [it is] charged." *Lum v. Bank of America*, 361 F.3d
> 217, 223–224 (3d Cir.2004). To satisfy this standard, the plaintiff must plead or
> allege the date, time and place of the alleged fraud or otherwise inject precision or
> some measure of substantiation into a fraud allegation.

*Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007).

In addition to reviewing the facts contained in the complaint, a court may consider "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994). When a document integral to or relied upon in the complaint is included, the court may also consider that document. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

Although a district court is not obligated to permit leave to amend before dismissing a complaint in a non-civil rights case, *Wolfington v. Reconstructive Orthopaedic Assocs. II P.C.*, 935 F.3d 187, 210 (3d Cir. 2019), courts generally grant leave to amend unless amendment of the complaint would be inequitable or futile. *See, e.g., Bachtell v. Gen. Mills, Inc.*, 422 F. Supp. 3d 900, 915 (M.D. Pa. Oct. 1, 2019) (citing *Phillips v. Allegheny Cty.*, 515 F.3d 224, 245 (3d Cir. 2008)).

## III.    Discussion

EnChroma's Motion seeks dismissal with prejudice of Counts II, IV, and V of the Complaint.  Eyenavision's Motion seeks dismissal with prejudice of EnChroma's Counterclaim. The Court will address each of the pending Motions in turn.

### A. EnChroma's Partial Motion to Dismiss

EnChroma asserts that Counts II, IV, and V of the Complaint should be dismissed because Eyenavision "makes only conclusory assertions" with respect to these claims and "fails to plead sufficient facts to state a plausible claim for which relief may be granted."  Mot. 1, ECF No. 12. More specifically, EnChroma asserts that Eyenavision's false marking claim should be dismissed because Eyenavision fails to plead with sufficient particularity that EnChroma intended to deceive

the public in purportedly falsely marking the EnChroma Lenses.  Br. in Supp. 11, ECF No. 13.
EnChroma argues that Eyenavision's claim for false advertising under the Lanham Act fails
because Eyenavision has not alleged facts that could establish that there is a likelihood of injury
to Eyenavision as a result of EnChroma's alleged false advertising, and that Eyenavision's
Pennsylvania unfair competition claim should also be dismissed for the same reason.  *Id.* at 12-14.
EnChroma also argues that Eyenavision's false marking and Lanham Act claims should be
dismissed because Eyenavision's allegations are insufficient to establish that it has statutory
standing to bring such claims.[3]  *Id.* at 14.  Specifically, EnChroma asserts that Eyenavision fails
to plead facts that could establish a link between EnChroma's allegedly wrongful conduct and a
"competitive" or "commercial" injury to Eyenavision.  *Id.*

### 1.   False Marking Under 35 U.S.C. § 292 (Count II)

"A person who has suffered a competitive injury as a result of a violation of [35 U.S.C. §
292(a)] may file a civil action in a district court of the United States for recovery of damages
adequate to compensate for the injury."  35 U.S.C. § 292(b).  In relevant part, 35 U.S.C. § 292(a)
provides: "[w]hoever marks upon, or affixes to, or uses in advertising in connection with any
unpatented article, the word 'patent' or any word or number importing that the same is patented,
for the purpose of deceiving the public . . . [s]hall be fined not more than $500 for every such
offense."  35 U.S.C. § 292(a).  To have statutory standing to state a claim for false marking, a
plaintiff must sufficiently allege that it "suffered a competitive injury as a result of the false
marking*."  Hall v. Bed Bath & Beyond, Inc.*, 705 F.3d 1357, 1373 (Fed. Cir. 2013).

---

[3] "'A dismissal for lack of statutory standing is effectively the same as a dismissal for failure to state a claim,' and a
motion to dismiss on this ground is brought pursuant to Rule 12(b)(6), rather than Rule 12(b)(1)."  *Leyse v. Bank of
Am. Nat. Ass'n*, 804 F.3d 316, 320 (3d Cir. 2015) (quoting *Baldwin v. Univ. of Pittsburgh Med. Ctr.*, 636 F.3d 69, 73–
74 (3d Cir.2011)).

"The two elements of a § 292 false marking claim are (1) marking an unpatented article and (2) intent to deceive the public." *Juniper Networks, Inc. v. Shipley*, 643 F.3d 1346, 1350 (Fed. Cir. 2011) (quoting *Forest Grp. Inc. v. Bon Tool Co.*, 590 F.3d 1295, 1300 (Fed. Cir. 2009)). "When the statute refers to an 'unpatented article' the statute means that the article in question is not covered by at least one claim of each patent with which the article is marked." *Juniper Networks*, 643 F.3d at 1350 (quoting *Clontech Labs., Inc. v. Invitrogen Corp.*, 406 F.3d 1347, 1352 (Fed. Cir. 2005)). "[F]alse marking claims must satisfy the heightened pleading standard of Fed. R. Civ. P. 9(b)." *Id.*; *see also U.S., ex. rel. FLFMC, LLC v. William Bounds, Ltd.*, No. CIV.A. 10-420, 2010 WL 4788554, at *5 (W.D. Pa. Nov. 17, 2010) (finding that "the false marking statute sounds in fraud and a plaintiff must meet the heightened pleading standards of Rule 9(b) to show intent to deceive.").

As noted above, Eyenavision avers, for reasons set forth in detail in the Complaint, that the EnChroma Lenses do not fall within the limitations of Claim 1 of the '286 Patent and that the EnChroma Lenses are not covered by the '286 Patent. Compl. ¶¶ 44-55, ECF No. 1. Eyenavision asserts that, accordingly, there exists an actual, justiciable controversy between Eyenavision and EnChroma as to whether the EnChroma Lenses are within the scope of the '286 Patent as they have been marked on EnChroma's website's "Enchroma Patent Marking Page." *Id.* at ¶ 55. EnChroma first argues that Eyenavision's false marking claim should be dismissed for failure to sufficiently allege that Eyenavision acted with the requisite intent to deceive the public.

"[A]lthough 'knowledge' and 'intent' may be averred generally[,]" and "a plaintiff may plead upon information and belief under Rule 9(b)[,]" a claim sounding in fraud or mistake must "allege sufficient underlying facts from which a court may reasonably infer that a party acted with the requisite state of mind." *In re BP Lubricants USA Inc.*, 637 F.3d 1307, 1311 (Fed. Cir. 2011)

(quoting *Exergen Corp. v. Wal–Mart Stores, Inc.*, 575 F.3d 1312, 1327 (Fed. Cir. 2009)).  The

United States Court of Appeals for the Federal Circuit has explained:

> Intent to deceive is a state of mind arising when a party acts with sufficient
> knowledge that what it is saying is not so and consequently that the recipient of its
> saying will be misled into thinking that the statement is true.  *Seven Cases v. United
> States*, 239 U.S. 510, 517–18, 36 S.Ct. 190, 60 L.Ed. 411 (1916).  Intent to deceive,
> while subjective in nature, is established in law by objective criteria.  *Id*.  Thus,
> "objective standards" control and "the *fact* of misrepresentation coupled with proof
> that the party making it had knowledge of its falsity is enough to warrant drawing
> the inference that there was a fraudulent intent".  *See Norton v. Curtiss*, 57 C.C.P.A.
> 1384, 433 F.2d 779, 795–96 (1970).  Thus, under such circumstances, the mere
> assertion by a party that it did not intend to deceive will not suffice to escape
> statutory liability.  Such an assertion, standing alone, is worthless as proof of no
> intent to deceive where there is knowledge of falsehood.  But in order to establish
> knowledge of falsity the plaintiff must show by a preponderance of the evidence
> that the party accused of false marking did not have a reasonable belief that the
> articles were properly marked (i.e., covered by a patent).  Absent such proof of lack
> of reasonable belief, no liability under the statute ensues.

*Clontech*, 406 F.3d at 1352-53.  The United States District Court for the District of Delaware has

held that, at the pleading stage, "the inference of intent to deceive may arise from evidence that a

defendant knew or should have known the marking was false."  *Brinkmeier v. Graco Children's

Prod. Inc.*, 767 F. Supp. 2d 488, 497 (D. Del. 2011).

      In this matter, the Court finds that Eyenavision has pled sufficient facts to permit the Court

to reasonably infer that EnChroma acted with intent to deceive the public in purportedly falsely

marking the EnChroma Lenses as covered by the '286 Patent.  Eyenavision alleges that the '286

Patent underwent an "extensive patent prosecution with specific claim terms being argued and

determined by the Board of Appeals and Patent Interferences," and further alleges that EnChroma

itself "was intimately familiar with the specific scope and content of the claims of the '286 Patent."

Compl. ¶¶ 71-72, ECF No. 1.  Eyenavision further avers that EnChroma knowingly and

intentionally falsely marked the EnChroma Lenses as being covered by at least one claim of the

'286 Patent to gain an unfair advantage in the marketplace and to unlawfully expand the effective

scope of the '286 Patent.  *Id.* at ¶¶ 71-73.  Eyenavision asserts that EnChroma's false marking of its products has resulted in EnChroma obtaining and maintaining a share of the market which would have gone to, and will go to, Eyenavision, but for EnChroma's false marking of the EnChroma Lenses, and that such false marking has caused substantial competitive injury to Eyenavision.  *Id.* at ¶¶ 72-73.

The Court notes that EnChroma itself also speaks to its familiarity with the technology and scope of the '286 Patent, which it discusses at length in the Partial Answer and Counterclaim that it chose to file at the same time it filed its Partial Motion to Dismiss.  In its Counterclaim for infringement of the '286 Patent, EnChroma sets forth allegations as to: (1) the early-2000s breakthrough that eventually led to the technology at issue; (2) EnChroma's clinical research into the technology at issue for more than a decade prior to the launch of its CVD lens technology; (3) EnChroma's efforts to protect "its innovations and its considerable investment in research and development by describing its inventions in patent applications and submitting those detailed disclosures to the United States Patent and Trademark Office"; and (4) the issuance of the '286 Patent.  Counterclaim ¶¶ 11-17, ECF No. 11.  Any assertion that EnChroma is not "intimately familiar with the specific scope and content of the claims of the '286 Patent" is seemingly belied by EnChroma's own assertions in a pleading it chose to file before the Court could rule on its Partial Motion to Dismiss.

Eyenavision has alleged that EnChroma manufactures, sells, and distributes lenses that are not covered by the '286 Patent, and that EnChroma has falsely marked its EnChroma Lenses as covered by the '286 Patent.  Eyenavision has set forth in detail the basis for its assertion that the EnChroma Lenses are not covered by the '286 Patent, and has set forth a number of reasons it believes that the EnChroma Lenses purportedly fall outside of the limitations of Claim 1 of the

'286 Patent.  *See* Compl. ¶¶ 44-55, ECF No. 1.  Eyenavision has alleged that EnChroma sells the EnChroma Lenses on EnChroma's website to the public under a banner that states: "#1 patented lens technology for color blindness."  *Id.* at ¶ 61.  The factual allegations at issue, when construed a manner most favorable to Eyenavision, indicate that EnChroma has had extensive involvement with, and has extensive knowledge of, the technology at issue in the '286 Patent, as well as the prosecution of that Patent.  These facts, when coupled with the assertion that the EnChroma Lenses are not covered by at least one claim of the '286 Patent with which these lenses are marked, support a reasonable inference that EnChroma had the requisite knowledge that the '286 Patent did not cover the EnChroma Lenses, but marked the EnChroma Lenses as covered by the '286 Patent in spite of such knowledge.  As such, Eyenavision has alleged facts sufficient to warrant drawing the inference that EnChroma acted with the requisite fraudulent intent to deceive the public.  Accordingly, the Court rejects EnChroma's argument that Count II of the Complaint should be dismissed for failure to sufficiently allege that EnChroma falsely marked its products with an intent to deceive the public.

EnChroma also argues that Eyenavision fails to plead sufficient facts to plausibly allege that Eyenavision has suffered a competitive injury due to EnChroma's purported false marking, and that Eyenavision thus lacks standing to pursue its false marking claim.  "To bring a cognizable claim for competitive injury, '[a claimant] must allege sufficient facts to plausibly establish that, as a result of [the opposing party's] mismarking[,] [the claimant's] ability to compete against [the opposing party] in the marke[t] for purchasers of such products was impaired, resulting in tangible economic loss to [the claimant].'"  *Cot'n Wash, Inc. v. Henkel Corp.*, 56 F. Supp. 3d 613, 624 (D. Del. 2014) (quoting *Fisher–Price, Inc. v. Kids II, Inc.*, Civ. No. 10–00988, 2011 WL 6409665, at

*9 (W.D. N.Y. Dec. 21, 2011)).  A plaintiff need not plead specific instances of competitive injury to sufficiently state a claim for false marking.  *Cot'n Wash, Inc.*, 56 F. Supp. 3d at 624.

In opposing EnChroma's Motion, Eyenavision avers that it has alleged that: (1) Eyenavision is commercializing, via license, its own CVD lens technology, which is the subject of at least one issued United States Patent and at least two pending United States patent applications; (2) EnChroma has commercialized its own CVD lens technology; and (3) EnChroma and Eyenavision are, accordingly, direct competitors in the CVD lens market.  Br. in Opp'n 14, ECF No. 18.  Eyenavision further avers that EnChroma falsely marked its products to gain an unfair advantage in the marketplace and to unlawfully expand the effective scope of the '286 Patent, and that EnChroma's false marking of its products has resulted in EnChroma obtaining and maintaining a share of the market that would have gone to, and will go to, Eyenavision, but for EnChroma's false marking of the EnChroma Lenses.  Compl. ¶¶ 71-73, ECF No. 1.  Eyenavision has also alleged that EnChroma sells the EnChroma Lenses to the public through EnChroma's website under a banner that states: "#1 patented lens technology for color blindness."  *Id.* at ¶ 61.

The Court finds that Eyenavision has set forth sufficient factual allegations to plausibly allege that Eyenavision's ability to compete against EnChroma for purchasers of CVD lenses was impaired as a result of EnChroma's alleged mismarking of the EnChroma lenses as "patented," resulting in tangible economic loss to Eyenavision.  While not the sole basis for the Court's conclusion, it bears acknowledging that, as currently alleged, Eyenavision and EnChroma are direct competitors in the very specific and relatively new market for CVD lenses.  Eyenavision alleges that EnChroma's website states that the EnChroma Lenses feature the "#1 patented lens technology for color blindness," and further alleges that the EnChroma Lenses do not, in fact, practice that patented technology.  Eyenavision has also alleged that, but for EnChroma's

purported false marking of the EnChroma Lenses as "patented," Eyenavision would have been able to obtain and maintain the portion of the market for CVD lenses that EnChroma currently maintains.  These allegations are sufficient to plead a competitive injury.  The Court finds that Eyenavision has sufficiently pled that it has suffered a competitive injury as a result of EnChroma's alleged false marking, and the Court will deny the Partial Motion to Dismiss with respect to Eyenavision's claim for false marking.

### 2. False Advertising Under the Lanham Act (Count IV) and Unfair Competition Under Pennsylvania Common Law (Count V).

To establish a claim for false advertising under the Lanham Act, a plaintiff is required to prove:

> 1) [T]hat the defendant has made false or misleading statements as to his own product [or another's]; 2) that there is actual deception or at least a tendency to deceive a substantial portion of the intended audience; 3) that the deception is material in that it is likely to influence purchasing decisions; 4) that the advertised goods traveled in interstate commerce; and 5) that there is a likelihood of injury to the plaintiff in terms of declining sales, loss of good will, etc.

*Pernod Ricard USA, LLC v. Bacardi U.S.A., Inc.*, 653 F.3d 241, 248 (3d Cir. 2011) (quoting *Warner–Lambert v. Breathasure*, 204 F.3d 87, 91–92 (3d Cir.2000)).  With respect to statutory standing, the United States District Court for the District of Delaware has explained:

> Standing under the Lanham Act requires that a plaintiff: (1) allege an injury that falls within the zone of interests protected by the Lanham Act—an injury to a commercial interest in reputation or sales; and (2) allege that the "economic or reputational injury flow[ ] directly from the deception wrought by the defendant's advertising," which occurs "when deception of consumers causes them to withhold trade from the plaintiff."

*Nespresso USA, Inc. v. Ethical Coffee Co. SA*, No. CV 16-194-GMS, 2017 WL 3021066, at *3 (D. Del. July 14, 2017) (quoting *Lexmark Int'l, Inc v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1391 (2014)).  The elements required to prove unfair competition through false advertising

under Pennsylvania common law are parallel to the elements needed to show a Lanham Act violation, absent the requirement for goods to travel in interstate commerce. *Reese v. Pook & Pook, LLC.*, 158 F. Supp. 3d 271, 288 (E.D. Pa. 2016).

EnChroma asserts that Eyenavision fails to plead a likelihood of injury resulting from EnChroma's alleged false advertising, and that Eyenavision thus fails to state a claim under the Lanham Act and also lacks statutory standing to bring such a claim. To successfully plead a claim for false advertising under the Lanham Act, a plaintiff must allege facts sufficient to show that "it has a reasonable basis for believing that it is likely to suffer injury, and that a causal nexus between the injury and the false name or advertisement exists." *Warner-Lambert*, 204 F.3d at 93. In considering these issues, the Third Circuit in *Warner-Lambert* discussed, inter alia, whether the products at issue were the same type of product, whether the advertising at issue implicitly took aim at the plaintiff's products, and whether the parties' products compete against each other. *Id.* at 92-97.

As alleged, and as discussed above, the Eyenavision Products and the EnChroma Lenses are both CVD lenses designed for the same purpose, and these products are clearly in direct competition with one another. Eyenavision alleges that EnChroma's website advertises that the EnChroma Lenses feature the "#1 patented lens technology for color blindness," that EnChroma advertises the EnChroma Lenses as "patented," and that the EnChroma Lenses do not, in fact, practice the technology described in EnChroma's '286 Patent. Compl. ¶ 96, ECF No. 1. Eyenavision avers that these representations are likely to influence consumers' buying decisions when choosing which CVD lenses to purchase, and that Eyenavision, as a result, has been, and is likely to be, substantially and irreparably harmed in the loss of its customers and brand goodwill. *Id.* at ¶¶ 98, 101, ECF No. 1. In light of the above, the Court finds that the Complaint alleges

sufficient facts, at this juncture, to state a reasonable basis for believing that Eyenavision is likely to suffer injury, and that a causal nexus between this injury and EnChroma's alleged false advertisement exists.   Accordingly, Eyenavision has pled sufficient facts to support statutory standing to bring its Lanham Act false advertising claim, and has further sufficiently alleged a likelihood of injury.   The Court will deny the Partial Motion to Dismiss as to Count IV of the Complaint.

The elements required to prove unfair competition through false advertising under Pennsylvania common law are parallel to the elements needed to show a Lanham Act violation, absent the requirement for goods to travel in interstate commerce.  *Reese*, 158 F. Supp. 3d at 288. EnChroma argues that Eyenavision's unfair competition claim should be dismissed for the same reasons that Eyenavision's Lanham Act false advertising claim should be dismissed.   In light of the same, the Court will deny the Partial Motion to Dismiss as to Count V of the Complaint for the same reasons discussed above with respect to the Court's denial of the Partial Motion to Dismiss as to Count IV.

### B.  Eyenavision's Motion to Dismiss Counterclaim

Eyenavision argues that EnChroma's patent infringement Counterclaim should be dismissed because it fails to aver how the Eyenavision Products infringe upon the '286 Patent, and further argues that EnChroma's Counterclaim "merely parrots the language of the patent at issue" and asserts, in conclusory fashion, that the products at issue infringe upon the patent.  Mot. 1, ECF No. 16.  With respect to direct infringement of patents, 35 U.S.C. § 271 provides, in relevant part, that "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent." 35 U.S.C. § 271(a).  "To state a claim of direct infringement

15

sufficient to withstand a motion to dismiss, a plaintiff must plead facts that plausibly suggest that the accused product meets each limitation of the asserted claim(s)." *AgroFresh Inc. v. Hazel Techs., Inc.*, No. CV 18-1486 (MN), 2019 WL 1859296, at *2 (D. Del. Apr. 25, 2019) (citing *TMI Sols. LLC v. Bath & Body Works Direct, Inc.*, No. 17-965 (LPS)(CJB), 2018 WL 4660370, at *9 (D. Del. Sept. 28, 2018)).  A patentee is not required to "prove its case at the pleading stage[,]" and a complaint is required put the alleged infringer "on notice of what activity . . . is being accused of infringement." *Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1379 (Fed. Cir. 2017) (citations omitted).

In reversing a district court's dismissal under Rule 12(b)(6) of a claim for patent infringement, the United States Court of Appeals for the Federal Circuit explained:

> The district court determined that Disc Disease failed to "explain how Defendants' products infringe on any of Plaintiff's claims" because it "merely alleges that certain of Defendants' products 'meet each and every element of at least one claim' of Plaintiff's patents." We disagree.  Disc Disease's allegations are sufficient under the plausibility standard of *Iqbal/Twombly*.  This case involves a simple technology.  The asserted patents, which were attached to the complaint, consist of only four independent claims.  The complaint specifically identified the three accused products—by name and by attaching photos of the product packaging as exhibits—and alleged that the accused products meet "each and every element of at least one claim of the '113 [or '509] Patent, either literally or equivalently." These disclosures and allegations are enough to provide VGH Solutions fair notice of infringement of the asserted patents.  The district court, therefore, erred in dismissing Disc Disease's complaint for failure to state a claim.

*Disc Disease Sols. Inc. v. VGH Sols., Inc.*, 888 F.3d 1256, 1260 (Fed. Cir. 2018) (citations omitted); *see also AgroFresh Inc.*, 2019 WL 1859296, at *2 ("Here, AgroFresh's Complaint identifies Defendant's accused product, Hazel CA, and the specific claims in the Daly 1 Patent (claims 1 and 6) and Daly 2 Patent (claim 1) that Defendant allegedly infringes, and the Complaint also states how Hazel CA purportedly infringes those claims. . . .  Pursuant to the Federal Circuit's decision in *Disc Disease*, and similar to the conclusion reached in [*Promos Tech., Inc. v. Samsung*

16

*Elec. Co.*, No. 18-307-RGA, 2018 WL 5630585 (D. Del. Oct. 31, 2018)], this Court finds that these factual allegations state a plausible claim of direct infringement and are sufficient to put Defendant on notice of AgroFresh's claims against it.").

The Court need not expend significant resources or time addressing the assertions in the Motion to Dismiss Counterclaim, as a review of the allegations set forth the Counterclaim, the briefing, and the relevant case law make clear that the Counterclaim is sufficiently pled to survive at this stage of the proceedings.  EnChroma sufficiently describes the technology and patent at issue, EnChroma's products, and the Eyenavision Products.  EnChroma further identifies the purportedly infringing products (the Eyenavision Products), the claim (Claim 1) in the '286 Patent that the Eyenavision Products allegedly infringe upon, each element of Claim 1 that the Eyenavision Products purportedly practice, and how the Eyenavision Products infringe Claim 1. The Counterclaim further asserts that Eyenavision has infringed on the '286 Patent by making, using, offering to sell, and selling the purportedly infringing Eyenavision Products.  Consistent with the case law cited above, the Court finds that EnChroma has set forth sufficient allegations in support of the Counterclaim to provide Eyenavision with requisite notice of how the Eyenavision Products purportedly infringe the '286 Patent.

Though not the basis for the Court's decision, as the Western District of Pennsylvania's Local Patent Rules do not modify a party's pleading requirements, *see* LPR 3.2(b)(10), the Court also notes that the Local Patent Rules require, at a later date, a party asserting a patent infringement claim to provide a specific "Disclosure of Asserted Claims and Infringement Contentions," LPR 3.2(b).  EnChroma's Counterclaim satisfies the *Iqbal/Twombly* plausibility standard, and that alone is the basis for denial of the Motion to Dismiss Counterclaim.  *See Align Tech., Inc. v. 3Shape A/S*, 339 F. Supp. 3d 435, 446 (D. Del. 2018) ("To require anything more at this stage of the case would

require the equivalent of infringement contentions, which is more than the law demands."). Eyenavision will, pursuant to the Local Patent Rules, receive specific infringement contentions as to the Eyenavision Products' alleged infringement of the '286 Patent at a later date, and any failure to comply with those requirements may be addressed at that time.  As it stands, however, EnChroma has set forth sufficient allegations to plead a plausible claim for direct infringement of the '286 Patent, and the Court will deny the Motion to Dismiss Counterclaim.

**IV.    Conclusion**

For the reasons discussed above, the Court will deny EnChroma's Partial Motion to Dismiss.  The Court will also deny Eyenavision's Motion to Dismiss Counterclaim.  An appropriate Order of Court follows.

BY THE COURT:

s/*Robert J. Colville*
Robert J. Colville
United States District Judge

DATED: March 15, 2022

cc: All counsel of record